UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 20-80531-CIV-SINGHAL/MCCABE

GORDON LAGERSTROM,

    Petitioner,

v.

SECRETARY, DEPARTMENT OF
CORRECTIONS, State of Florida,

    Respondent.
_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Gordon Lagerstrom's Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") (DE 1), which was referred to the undersigned by United States District Judge Raag Singhal (DE 14). Petitioner raises a single ground for relief:

> Petitioner received ineffective assistance of trial counsel, in violation of his clearly established Sixth Amendment rights, because his trial counsel failed to advise him to accept the State's twenty-five (25) year plea offer, as doing so would have been in Petitioner's best interest in light of the gain time implications and because of the overwhelming evidence of guilt.

(DE 1 at 5). As set forth below, the undersigned **RECOMMENDS** that the Petition (DE 1) be **DENIED** because it is untimely and, alternatively, because it fails on the merits.

I.    **BACKGROUND**

    A.    **Criminal Charges**

On July 28, 2015, the State Attorney for the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida (the "State"), charged Petitioner, by way of a Second Amended Information with six (6) counts of sexual battery on a person less than twelve (12) years of age, case number

2013CF003395AMB (R. 17-19).[1]  The offenses allegedly occurred on multiple occasions between January 1, 1997 and May 31, 1999 against Petitioner's biological nieces, whom he had adopted when they were approximately five (5) and six (6) years old (R. 17-19, T. 443).  The alleged incidents began shortly after the adoptions (T. 480, 536)

    **B.**    **Plea Offer**

On July 28, 2015, a state court judge conducted a hearing during which he inquired whether a plea offer had been made to Petitioner (R. 187-190).  After a brief recess, the State and defense counsel confirmed that the State had conveyed a twenty-five (25) year plea offer to Petitioner, but that he had rejected it (R. 187-190).  The state court judge then addressed Petitioner directly and explained the charges against him and the fact that each count carried a mandatory life sentence (R. 189-190).  The following exchange then took place:

> THE COURT:  My understanding is the State did make a plea offer that would have involved a 25-year sentence which has been communicated to you by your counsel and which you have respectfully rejected; is that a fair statement?
>
> [PETITIONER]:  Yes, sir.
>
> THE COURT:  Okay. Do you have any questions?
>
> [PETITIONER]:  No, sir.

(R. 190).

Then again, on the morning of the first day of trial, November 30, 2015, another state court judge inquired about any plea offers (T. 6-7).  The State re-confirmed it had made a twenty-five (25) year plea offer and that Petitioner had rejected it (T. 7).  The court inquired whether the charges carried any mandatory minimum sentences, and the State confirmed, "[y]es, the only

---

[1] The record ("R.") is located at DE 10-1 and the trial transcript ("T.") is located at DE 11-1.

sentence is life imprisonment for each count" (T. 7).  The court then turned to Petitioner and his counsel, and the following exchange took place:

> THE COURT:  Okay. And, Mr. Grinberg, you have relayed that offer to your client?
>
> [COUNSEL]:  I have on numerous occasions, but I would like for him to put it on the record that he does not want to take those.
>
> THE COURT:  Yes.
>
> [COUNSEL]:  That's accurate?
>
> [PETITIONER]:  Yes.
>
> THE COURT:  So the last offer from the State, as [the prosecutor] just put on the record – I want to make sure that your client – that your attorney has discussed that with you.
>
> [PETITIONER]:  Yes.
>
> THE COURT:  And is it your desire to go forward with the jury trial?
>
> [PETITIONER]:  That is correct, ma'am.
>
> THE COURT:  Okay, and you're not interested in accepting the State's offer; is that correct?
>
> [PETITIONER]:  Oh, no. No, ma'am.
>
> THE COURT:  Okay. All right, we just needed to put that on the record.

(T. 7-8).

    **C.**    **Trial**

The case then proceeded immediately to a three (3) day jury trial.  The State presented the testimony of the two (2) victims, as well as a police detective, and Petitioner's ex-wife.  Both victims testified to the same basic pattern of abuse.  Petitioner would direct the victims, at separate times, to go into the bathroom and look at pornographic magazines while he stood outside the door

3

and instructed them to touch their vaginas (T. 480-81, 536-38). Petitioner would also enter the bathroom while the victims showered (T. 485, 542-45). He would sit next to the shower, tell the victims to touch their vaginas, and sometimes touch the victims (T. 485, 545).

The victims also testified that Petitioner would enter their bedroom at night (T. 487-89, 546). The victims slept in bunkbeds, and Petitioner typically targeted the girl sleeping on the bottom bunk (T. 487-89, 546-49). Petitioner put his mouth on one of the victim's vaginas, and he digitally penetrated both victims (T. 487-89, 546-49).

The victims reported Petitioner to the police in 2013 (T. 495, 558-59). A police detective thereafter assisted the victims in placing a controlled call to Petitioner, which the State introduced into evidence at trial (T. 495-96, 559-560). After the controlled call, the detective arrested Petitioner and obtained a recorded statement from him, which the State also introduced at trial (T. 580-81).

During the defense case, the court called counsel to a sidebar to inquire whether Petitioner wished to testify (T. 777). Defense responded, "[w]e need to do it all on the record," and asked the court to "question him if he wants to or not … because he wants to and, you know, I want to make sure we're clear" (T. 777). The court complied and confirmed on the record that Petitioner wished to testify on his own behalf (T. 779).

Petitioner then took the stand and testified that he never touched the victims' vaginas with his hands or his tongue (T. 785). He further testified that, at the time of the controlled call and the recorded statement to police, he was medicated with a combination of Ambien and Xanax and was therefore not alert or aware of the nature of the conversations (T. 786, 794).

4

At the close of trial, the jury found Petitioner guilty on all five (5) counts submitted (R. 26; T. 964-65).[2] The state court adjudicated Petitioner guilty, designated him a sexual predator, and imposed consecutive life sentences for each count (R. 28-45; T. 968, 972).

### D. Direct Appeal

Petitioner appealed his conviction and sentence to the Fourth District Court of Appeal ("DCA"), case number 4D15-4863 (R. 47-55). The appeal argued, inter alia, that Petitioner received ineffective assistance of trial counsel (R. 57-107). Specifically, Petitioner argued that trial counsel failed to protect Petitioner's interests, citing as an example the fact that trial counsel "went out of his way to make it apparent that he viewed his client's refusal to accept the [plea] deal as unreasonable":

> For example, even before jury selection began Defense counsel made [his negative] attitude clear when the trial judge asked whether a plea offer had been made, and relayed to [Petitioner]. Rather than simply answering in the affirmative, or saying that a reasonable offer had not been made, *Defense counsel went out of his way to make it apparent that he viewed his client's refusal to accept the deal as unreasonable and wanted it documented, telling the trial judge that "I have relayed offers to [Petitioner] on numerous occasions, but I would like for him to put it on the record that he does not want to take those."*
>
> Similarly, later in the trial Defense counsel made it a point to tell the trial judge and prosecutors that his client was testifying against his advice and that he was simply "letting my client do what he wants to do." In further elevation of his own self-interest over the interests of his client, Defense counsel asked [Petitioner] on re-direct questions with no purpose other than to show that counsel had offered [Petitioner] an opportunity to hear the recorded conversations, simultaneously showing the jury that counsel viewed his own client as unreasonable. When the State objected, Defense counsel explained in a sidebar conference that his purpose for asking the question was only "to cover my own behind, make sure that we clarify that he chose not to hear it."

---

[2] The Second Amended Information originally contained six (6) counts. At the close of the State's case, however, the state court granted a judgment of acquittal as to Count IV due to a lack of evidence to support that count (T. 743-44)

(R. 103-04) (emphasis added) (cleaned up).

After the appeal was fully briefed, the Fourth DCA affirmed the judgment and sentence in a per curiam decision on December 21, 2017 (R. 162). The appellate mandate issued shortly thereafter (R. 164).

### E.  Postconviction Motion

On November 27, 2018, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (R. 166-180). The motion raised a single ground for relief, namely, that trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, by failing to advise Petitioner to accept the State's plea offer, in light of the gain time implications of a twenty-five (25) year sentence and the evidence of guilt (R. 166-180).

The postconviction trial court summarily denied the motion on January 7, 2019, finding the Sixth Amendment does not recognize a theory of ineffective assistance based on trial counsel's failure to affirmatively recommend a plea offer (R. 183-84). The court reasoned:

> [Petitioner] correctly concedes that his attorney advised him of the State of Florida's plea offer which he acknowledges rejecting. [Petitioner's] claim of defense counsel failing to advise him of the weight of the evidence against him and to affirmatively recommend that he take a plea offer are claims not cognizable in a post-conviction motion claiming ineffective assistance of counsel. *Santos v. State*, 125 So. 3d 962, 964-65 (Fla. 4th DCA 2013); *Hurt v. State*, 82 So. 3d 1090, 1093 (Fla. 4th DCA 2012). Counsel's duty is to inform his client of the plea offer and the decision to take or reject a plea is a personal one made by the defendant.
>
> Here, [Petitioner] does not claim that his attorney affirmatively advised him to reject the State's offer, or failed to accurately convey the plea offer, or misadvised him as to the range of possible penalties. The claim, instead, is that defense counsel was silent about whether [Petitioner] should accept the State's offer and failed to affirmatively advocate to his client that he should accept it based on the strength of the evidence in the case. In *Santos, supra* the Fourth District addressed the exact same claim that an attorney was ineffective for failing to advise the defendant on the strength of the State's case and that he then rejected a conveyed plea offer without knowing all of the facts. The Fourth District held that this type of claim

6

>was not cognizable in a post-conviction motion. In this case, [Petitioner's] plea offer was lost, [Petitioner] proceeded to trial and was convicted. As pointed out in both *Santos* and *Hurt*, *supra*, to allow a defendant a 'Monday morning quarterback do-over decision' that he should've accepted the offer or to allow a re-opening of plea negotiations is prejudicial to the State.
>
>Neither is it ineffective assistance of counsel for the alleged failure of defense counsel to advise the defendant as to the good and gain time consequences of a 25-year DOC sentence offered by the State of Florida. This is a collateral consequence of the plea for which defense counsel owes no duty to advise a client. *Smith v. State*, 126 So. 3d 397, 400 (Fla. 4th DCA 2013) (holding that gain time eligibility as a collateral consequence for which defense counsel has no duty to advise the defendant); *State v. Rodriguez*, 990 So. 2d 600, 606 (Fla. 3d DCA 2008) (same).

(R. 183-84).

Petitioner appealed this ruling to the Fourth DCA, case number 4D19-353 (R. 199-205). On August 22, 2019, the Fourth DCA affirmed the trial court in a per curiam decision (R. 239). The appellate mandate issued on October 11, 2019 (R. 239).

This Petition followed on March 30, 2020 (DE 1).

## II. ANALYSIS

Petitioner brings this action pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The statute further provides:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1-2).

In the context of habeas petitions, "clearly established Federal law" refers to the holdings of the Supreme Court as of the time of the relevant state court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002). "A state-court decision is contrary to … clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state-court decision involves an unreasonable application of [the Supreme Court's] clearly established precedents if the state court applies such precedents to the facts in an objectively unreasonable manner." *Id.*

Here, Petitioner alleges a single ground, namely, that trial counsel rendered ineffective assistance, in violation of Petitioner's Sixth Amendment rights, by failing to advise Petitioner to accept the State's twenty-five (25) year plea offer, as doing so would have been in Petitioner's best interest in light of the gain time implications of the offer and because of the overwhelming evidence of guilt (DE 1 at 5). The Court will address timeliness before turning to the merits.[3]

    **A.**    **Timeliness**

Federal law sets forth strict time limits for filing habeas petitions. Pursuant to 28 U.S.C. § 2244(d)(1), a "1-year period of limitations shall apply to an application for writ of habeas corpus."

---

[3] The parties do not dispute, and the Court finds, that Petitioner fully exhausted his claim of ineffective assistance of trial counsel. Petitioner raised this issue in his state court postconviction motion and therefore "fairly present[ed] every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *See Pope v. Sec'y for Dep't of Corrs.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (cleaned up).

For purposes of the instant case, the clock started to run from "the date on which the judgment became final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). The AEDPA also provides for tolling of the limitations period during the pendency of any state court postconviction proceedings. 28 U.S.C. § 2244(d)(2). As such, the clock stops running during the pendency of such proceedings and resumes once those proceedings conclude. *Lawrence v. Florida*, 549 U.S. 327, 331-32 (2007).

In this case, the Court need not detail the mathematical calculations of timeliness, as Petitioner concedes he missed the relevant deadline by approximately six (6) weeks (DE 4 at 16; DE 9 at 7). Petitioner argues, however, that the deadline should be equitably tolled because he "was unable to secure the funds to retain private counsel to file his petition until after the deadline for filing the petition passed, and he was not appointed counsel to assist him with the filing of the petition prior to the expiration of the limitations period" (DE 4 at 17-19).

To qualify for equitable tolling, Petitioner "must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 336 (cleaned up). "[E]quitable tolling is an extraordinary remedy ... limited to rare and exceptional circumstances and typically applied sparingly." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009). "The petitioner bears the burden of showing that equitable tolling is warranted." *Id.* For the reasons below, the Court finds that Petitioner has not satisfied this burden.

1. **Extraordinary Circumstance**

To begin, Petitioner cites no authority for the proposition that financial inability to secure habeas counsel qualifies as an "extraordinary circumstance" to support equitable tolling.

Numerous courts have reached the opposite result. *See, e.g.*, *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (holding that pro se status and lack of access to an attorney did not warrant equitable tolling); *Mason v. Lindsey*, 18-1475, 2018 WL 3587030, at *2 (6th Cir. July 19, 2018) ("[B]ecause [petitioner] has no constitutional right to counsel in the habeas context, his inability to retain an attorney and obtain legal assistance does not warrant tolling."); *Wilson v. Birkett*, 192 F. Supp. 2d 763, 766 (E.D. Mich. 2002) (holding that petitioner's claim that he "did not have funds to hire an attorney" did not "support the equitable tolling of the statute of limitations."); *Brill v. Superintendent, Oneida Corr. Facility*, 277 F. Supp. 2d 205, 208 (E.D.N.Y. 2003) (holding that petitioner's inability to retain legal counsel did not constitute an "exceptional circumstance" to justify equitable tolling). This Court, too, agrees that financial inability to secure habeas counsel does not qualify as an "extraordinary circumstance" sufficient for equitable tolling.

To overcome this hurdle, Petitioner raises a two-part argument. First, he argues that, due to the manner in which the state court denied his Rule 3.850 motion, this Petition should be deemed his "initial review collateral proceeding" (DE 4 at 17). Specifically, he complains that the state court never addressed the merits of his Rule 3.850 motion, leaving this Court to be the first to do so (DE 4 at 17). Next, he argues that, because this Petition should be deemed his "initial review," he therefore gains the benefit of *Martinez v. Ryan*, 566 U.S. 1 (2012), which purportedly stands for the proposition that "where claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a criminal defendant has the right to counsel in that initial proceeding" (DE 4 at 17). Based upon this chain of logic, Petitioner argues his case presents a highly unusual situation, where equity demands tolling of the limitations period (DE 4 at 17-18).

The Court cannot agree. Contrary to Petitioner's argument, the state court addressed the merits of his Rule 3.850 motion (R. 183-84). That is to say, the state court did not deny the motion on procedural grounds, but instead addressed the "merits" by finding that the Sixth Amendment does not recognize a theory of ineffective assistance based on trial counsel's failure to affirmatively recommend a plea offer (R. 183-84). Likewise, the instant Petition arises under 28 U.S.C. § 2254 and therefore cannot be deemed an "initial review" of Petitioner's Sixth Amendment claim. By statute (and subject to limited exceptions not relevant here), this Petition is limited solely to claims that have been previously presented and exhausted in state court. *See* 28 U.S.C. § 2254(d)(1).

Next, even if this Petition could be deemed an "initial review," *Martinez* does not stand for the proposition that the Sixth Amendment guarantees the right to counsel in such proceedings. *Martinez* merely held that inadequate assistance of counsel at initial review collateral proceedings may establish cause to excuse a procedural default of a habeas petitioner's claim for ineffective assistance of trial counsel. 566 U.S. at 17. *Martinez* did not alter the long-established rule that the Sixth Amendment offers no guarantee of counsel on collateral attack. *See, e.g.*, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *United States v. Davis*, 400 F. App'x 538, 539 (11th Cir. 2010) ("We have consistently held that there is no federal constitutional right to counsel in postconviction proceedings.") (cleaned up); *Hill v. Jones*, 81 F.3d 1015, 1024 (11th Cir. 1996) ("While defendants have a Sixth Amendment right to counsel at trial and on direct appeal, they do not have a corresponding right to counsel when collaterally attacking their convictions.").

Finally, and at any rate, the Eleventh Circuit has made clear that *Martinez* does not provide a basis for equitable tolling. Specifically, in *Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014),

the Eleventh Circuit held that "the *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period." For this reason as well, Petitioner cannot satisfy the first prong of the test for equitable tolling.

### 2. Diligence

To qualify for equitable tolling, Petitioner must also show that he pursued his rights diligently. *See Diaz v. Sec'y for Dept. of Corr.*, 362 F.3d 698, 702 (11th Cir. 2004) ("[E]quitable tolling is available only if a petitioner establishes *both* extraordinary circumstances and due diligence.") (emphasis added). Petitioner argues he satisfies this prong of the test because "he pursued his rights diligently by trying to secure funds to retain private counsel" (DE 4 at 17). The Court finds this bare assertion insufficient to satisfy the burden. Indeed, many habeas petitioners file timely pro se petitions on their own without the aid of counsel. *See Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) (noting that "proceeding pro se is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim"). Petitioner could have chosen this option but did not do so.

For all these reasons, the Courts finds Petitioner cannot meet the burden necessary to justify equitable tolling. As such, this Petition must be denied as untimely, and the Court need not address the merits. Nevertheless, for the sake of completeness, the Court will do so.

### B. Merits of the Petition

To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must show that counsel rendered deficient performance. *Id.* This means the representation provided by

counsel fell outside a "wide range of competent assistance." *Id.* at 690. In analyzing counsel's competence, the court must afford a "heavy measure of deference to counsel's judgments." *Id.* at 691. Second, a petitioner must show the deficient performance prejudiced the defense. *Id.* This means a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Both parts of the test must be satisfied. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

In addition, under the AEDPA, this Court must afford deference to the state court decision that denied Petitioner's Sixth Amendment claim on the merits. *See Johnson v. Sec'y, DOC*, 643 F.3d 907, 911 (11th Cir. 2011) ("The standard is not whether an error was committed, but whether the state court decision was contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court"). Accordingly, both the *Strickland* test and the AEDPA standard of review require this Court to afford deference. This "[d]ouble deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Id*. With this standard in mind, the Court turns to the two prongs of the *Strickland* test.

    **1.  Deficient Performance**

The Sixth Amendment guarantees the right to effective assistance of counsel at all critical stages of criminal proceedings, including the plea stage. *See Hawkins v. United States*, No. 16-15323-A, 2016 WL 9528784, at *4 (11th Cir. Dec. 9, 2016) ("The Supreme Court has made clear that plea negotiations are a 'critical stage' of a criminal proceeding, and that the Sixth Amendment

right to counsel therefore applies."). In general, to render effective assistance at the plea stage, trial counsel must "communicate to the defendant the terms of the plea offer," inform the defendant "of the strengths and weaknesses of the case against him," and inform the defendant of "the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000). The state court decision denying Petitioner's Rule 3.850 motion reiterated these same obligations (R. 184). *See also* Fla. R. Crim. P. 3.171(c)(2)(B) ("Defense counsel shall advise defendant of all pertinent matters bearing on the choice of which plea to enter and the particulars attendant upon each plea and the likely results thereof, as well as any possible alternatives that may be open to the defendant.") (cleaned up).

Petitioner raises three (3) sub-claims, each of which the Court will address in turn.

### i. The Duty to make an Affirmative Recommendation

First, in state court, and again here, Petitioner seeks to impose on trial counsel the duty to *affirmatively recommend* a plea offer. Specifically, Petitioner alleges his trial counsel rendered ineffective assistance by failing to advise him to *accept* the State's twenty-five (25) year plea offer, as doing so would have been in Petitioner's best interest in light of the gain time implications and because of the overwhelming evidence of guilt (DE 1 at 5).[4] The state court found this claim "not cognizable," citing to previous Florida appellate decisions that declined to extend the Sixth Amendment to cover this theory of ineffective assistance, *see Santos*, 125 So. 3d at 964-65 and *Hurt*, 82 So. 3d at 1093 (R. 183-84).

---

[4] The Court notes this theory conflicts with the theory Petitioner raised on direct appeal, where he argued that trial counsel rendered ineffective assistance because he "went out of his way to make it apparent that he viewed his client's refusal to accept the [plea] deal as unreasonable" (R. 103-04).

14

After careful review, this Court concludes the state court decision does not contradict or result in an unreasonable application of "clearly established Federal law."  *See* 28 U.S.C. § 2254(d)(1-2) (setting the AEDPA standard to review state court decisions).  In *Purdy*, 208 F.3d at 45, the Second Circuit addressed a similar issue, declining to adopt a bright line rule that trial counsel must, in all circumstances, make an affirmative recommendation on a plea offer.  The court reasoned that "counsel's determination as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because representation is an art, and there are countless ways to provide effective assistance in any given case."  *Id.*  As such, the Second Circuit declined to find ineffective assistance merely because trial counsel made no affirmative recommendation on an outstanding plea offer from the government. *Id.*  The court noted that noted that the "ultimate decision whether to plead guilty must be made by the defendant," *id.*, an observation echoed by the state court decision that denied Petitioner's Rule 3.850 motion (R. 184).

Petitioner nevertheless argues the state court decision violates clearly established Sixth Amendment law, pointing to two (2) Supreme Court cases:  *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948) and *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010).  Petitioner argues these cases stand for the proposition that the Sixth Amendment requires trial counsel to make an affirmative recommendation whether to accept or reject every plea deal offered by the government (DE 4 at 7-8).  The Court does not agree and finds these cases distinguishable.

In *Von Moltke*, 332 U.S. at 708, the Supreme Court addressed a habeas petition filed by a woman accused of spying for the German government during World War II.  The petitioner waived her right to counsel and agreed to plead guilty after meeting with an FBI agent who affirmatively

15

misrepresented the law of conspiracy during a meeting with her. *Id.* at 716. Under those circumstances, the Supreme Court reversed a Sixth Circuit decision that affirmed the dismissal of her habeas petition. *Id.* at 727. The *Von Moltke* case did not decide the legal question at issue here, i.e., whether a habeas petition must be granted based upon trial counsel's alleged failure to affirmatively recommend or advocate in favor of a plea offer. Indeed, the habeas petitioner in *Von Moltke* had no trial counsel at all.

Likewise, in *Padilla*, 559 U.S. at 356, the Supreme Court addressed a habeas petition filed after trial counsel misadvised the petitioner regarding the deportation consequences of her guilty plea. The Supreme Court found "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 367. The Court therefore concluded that counsel rendered deficient performance for purposes of the first prong of the *Strickland* test and remanded for a determination on the second prong. *Id.* at 375.

Like *Von Moltke*, the *Padilla* case did not address or resolve the issue raised by this Petition. In short, neither Supreme Court case cited by Petitioner supports the view that the state court decision denying Petitioner's Rule 3.850 motion contradicted or resulted in an unreasonable application of "clearly established Federal law." *See* 28 U.S.C. § 2254(d)(1-2).

### ii. Gain Time Considerations

To the extent Petitioner argues trial counsel rendered ineffective assistance by failing to advise him of the gain time consequences of his plea, the claim must be denied. Florida law considers game time to be a collateral consequence of a plea. *See, e.g.*, *Stansel v. State*, 825 So. 2d 1007 (Fla. 2d DCA 2002). As such, numerous courts have rejected habeas petitions arguing that trial counsel rendered ineffective assistance by failing to explain, predict, or give advice

regarding Florida gain time calculations prior to the entry of a plea. *See Isidore v. Jones*, No. 17-CV-21021, 2018 WL 10502440, at *18 (S.D. Fla. Apr. 27, 2018), *R. & R. adopted*, 2018 WL 10502384 (S.D. Fla. Nov. 8, 2018) (denying habeas claim that trial counsel failed to advise petitioner regarding gain time consequences of plea); *Walker v. Sec'y, Dep't of Corr.*, No. 6:11-cv-804-Orl-18GJK, 2013 WL 12432889, *4 (M.D. Fla. Jan. 25, 2013) (same); *Houston v. Sec'y, Dep't of Corr.*, No. 8:05-cv-1419-T-17MAP, 2007 WL 1362921, *3 (M.D. Fla. May 9, 2007) (same). This Court reaches the same conclusion.

### iii. Weight of the Evidence

Likewise, the claim must be denied to the extent Petitioner argues trial counsel rendered ineffective assistance by failing to inform him that the State had overwhelming evidence of his guilt. The record shows Petitioner was aware of the evidence against him. As an example, the probable cause affidavit outlined the victims' allegations in detail (R. 13-15). Defense counsel also deposed both victims (R. 9; *see* T. 497). Moreover, Petitioner gave a recorded statement to police and personally participated in a controlled call (T. 603-644, 651-726), both of which contained incriminating statements by him.[5]

Moreover, Petitioner took the stand at trial and testified in his own defense. Nothing in his testimony indicated he was unaware of the victims' allegations or his own previous recorded statements. Instead, he pursued a defense theory based on the premise that the victims were confused or mistaken, as they had told him they were having nightmares of someone *else* molesting

---

[5] In line with his theory of defense, Petitioner testified that he did not remember his recorded statement and the controlled call (T. 812, 829). He stated that he reviewed the control call prior to trial (T. 810), but had not reviewed his recorded statement to police (T. 289). He admitted, however, that counsel gave him an opportunity to review his recorded statement which he declined (T. 289).

them (T. 798, 802, 804). He also acknowledged the recorded calls but attributed his statements to the influence of Ambien and/or Xanax (T. 920-21, 807, 823). Once again, nothing in the testimony indicated he was unaware of the evidence; he merely offered alternative or less damaging explanations.

For all the above reasons, the Court finds Petitioner cannot satisfy the first prong of *Strickland* test. He cannot show his trial counsel rendered a degree of performance that fell outside the "wide range of competent assistance." *See Strickland*, 466 U.S. at 690.

### 2. Prejudice

A habeas petitioner must satisfy both prongs of the *Strickland* test to warrant relief. *Holladay*, 209 F.3d at 1248. Accordingly, a court need not address the prejudice prong if a petitioner cannot meet the performance prong, or vice versa. *Id.* In this case, the state court never addressed the prejudice prong, because it found the performance prong unsatisfied (R. 183-84). This Court likewise declines to address the prejudice prong, finding it unnecessary to do so.

### III. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

Based on the foregoing, the undersigned **RECOMMENDS** as follows:

1. The Petition (DE 1) be **DENIED**.

2. The undersigned finds an evidentiary hearing is not required to resolve the Petition. *See Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if record refutes the factual allegations in the § 2254 petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing); *Dickson v. Wainwright*, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of

counsel.").

3. Further, the undersigned finds no substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (a prisoner seeking to appeal a district court's final order denying habeas corpus relief has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability by meeting the *Slack* test). Therefore, a certificate of appealability should **NOT ISSUE.**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Raag Singhal. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 1st day of February 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE